UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | CRIMINAL NO. 20-CR-10222-RGS |
| PHILIP RAYMOND, | ) | |
| | ) | |
| Defendant | ) | |

## GOVERNMENT'S SENTENCING MEMORANDUM

Defendant Philip Raymond, a serial predator, stands convicted of sexually exploiting thirteen children over a period of approximately ten years.  In writings and recordings that he never expected to see the light of day, he reveled in his illicit access to children entrusted to his care and glorified his hands-on abuse of one of his victims.  For the reasons outlined below and to be articulated at the sentencing hearing, the government respectfully requests that this Court impose a sentence that includes incarceration for 720 months (60 years) and, if he should ever be released from prison, 60 months (5 years) of supervised release.

I.   **Facts**

The government relies on and incorporates the facts as set forth in the statement of offense conduct in paragraphs 10 through 21 of the Presentence Investigation Report ("PSR"), as well as Probation's assessment of offender characteristics (PSR ¶¶ 137-165).  Essentially, the defendant sexually abused Minor A, a child in his care, producing imagery of that abuse that was found in his collection 15 years later, when she was finally able to come forward to report his abuse after learning that he had been found not guilty of sexually abusing *another* child known to him.  PSR ¶¶ 10, 12, 14.  It was only then, in 2019, when law enforcement discovered that following his abuse of Minor A, the defendant had also produced videos of himself sexually abusing another child in

his care, Minor C, who was even younger at the time.  PSR ¶ 18.  Minor A's disclosure also brought to light the defendant's attempts (some successful) to create surreptitious, lascivious recordings of several other children as they undressed in his young daughter's bedroom and used the family bathroom.  PSR ¶¶ 14-18.  The defendant's diary-style written account of his grooming and abuse of Minor A and his videotaped explanation of how and why he was planting a spy-cam in his home – to capture little girls' developing bodies in the nude – demonstrate that his protracted course of conduct was designed for one purpose: his own sexual gratification.  PSR ¶ 16 and Exh. (pp. 46-62).  As the evidence shows, the defendant continued consuming child pornography up until the day he was arrested.  PSR ¶¶ 11, 18, 19.

## II.      <u>Sentencing Guidelines Calculation</u>

Based on its assessment of the defendant's total offense level as 47 (which is treated as 43) and his criminal history category as I, the United States Probation Office ("Probation") has computed a Guidelines sentence in this case to include a term of incarceration for life (which is technically calculated as 4,680 months, given the statutory maximum term of incarceration for each of the charged counts); the Guidelines range of supervised release is five years to life.

The government agrees with Probation's calculation of the defendant's Offense Level and Criminal History Category, including its treatment of the defendant's objections, and thus agrees with its determination of his Guidelines Sentencing Range (GSR).[1]

While the defendant does not object to the application of USSG § 4B1.5, he suggests that its application unfairly inflates the defendant's offense level.  The fact that this enhancement

---

[1]   The government notes that the Sentencing Commission data cited by the defendant, Def. Memo. 12-13, does not *limit* a life sentence to 470 months.  It assigns a value of 470 months to sentences reported as "life" for purposes of their inclusion in statistical analysis.  Sentences of more than 470 months are also reported as 470 months.  *See* U.S. Sentencing Com'n, Judiciary Sentencing Information data, https://jsin.ussc.gov/analytics/saw.dll?Dashboard.

applies in the absence of prior convictions, however, is reasonable. A criminal record is one way to measure an offender's dangerousness. But this offender's dangerousness also must be evaluated in the context of his commission of this particular crime – a context in which victims often do not come forward immediately (if ever) and in which this type of crime often goes undetected. *See, e.g., United States v. Oberg*, 877 F.3d 261 (7th Cir. 2017) (district judge properly noted that defendants in child pornography cases often have limited criminal histories). In any case, the defendant is not one of those offenders to whom § 4B1.5 applies "merely" because his offense involved more than one *instance* of prohibited sexual conduct. Philip Raymond is a true serial offender. He has sexually abused at least two children and forever memorialized it on film.[2] He documented, in lurid written detail, the sexual abuse of one of those children. He created or attempted to create imagery capturing at least 11 other children's "smooth, tiny, firm, naked little bod[ies]." PSR ¶ 16. In short, this is not a "technical" application of a five-level enhancement – the defendant is the exact type of offender to whom such a significant enhancement should apply because it effectively accounts for the scope of his victimization and predation in measuring his culpability against other offenders charged with violations of 18 U.S.C. § 2251.

## III.     <u>Restitution</u>

Only two of the 13 victims charged in this case have requested restitution. Minor D requests reimbursement for out-of-pocket medical expenses in the amount of $13,262. Minor H requests reimbursement for out-of-pocket medical expenses in the amount of $2,285. The

---

[2]  Prior to his cache of child pornography being discovered in 2019, the defendant was accused and found not guilty following a jury trial of indecent assault and battery against Minor E in 2018. The child pornography featuring Minor E (some of which included EXIF data indicating dates of production between 2008 and 2010, *see* PSR ¶ 18(3)) was thus not known to prosecutors (or, obviously, presented to the jury) in the state district court case, which centered on alleged conduct from the fall/winter of 2008 (*see Commonwealth v. Raymond*, 1721cr0203, Comm. Bill of Particulars, filed 8/17/18).

government submits that these amounts are reasonable determinations of the losses incurred and reasonably projected to be incurred in the future proximately caused by the defendant's offenses. 18 U.S.C. § 2259(c)(2).  The parties have conferred; the defendant does not object to these amounts being ordered, and the government thus requests that the Court impose restitution accordingly.

IV.      **Application of the Section 3553(a) Factors**

For the reasons outlined herein, and those to be articulated at the sentencing hearing, the government submits that its recommended sentence is reasonable, and necessary in this case, to promote respect for the law, to adequately punish the defendant for his criminal conduct, to deter him and others from offending in the same ways again, and to protect the public.  The government understands that the Guidelines sentencing ranges for child exploitation crimes in general – and the GSR for this defendant, in particular – are quite high as compared to the ranges for many other crimes that are prosecuted in federal court.  That distinction is not without reason: both Congress, in setting the mandatory minimum sentence of incarceration applicable to the defendant's offenses of conviction, and the Sentencing Commission, in developing the Guideline and specific offense characteristics applicable to his conduct, clearly recognize that individuals who prey on the most vulnerable members of our society merit truly significant punishment that is commensurate with the harm they cause and the danger they pose.

In some cases, the mandatory minimum penalty of 15 years might be appropriate.  This is not that case.  It is difficult to overstate the seriousness of the defendant's crimes.  His conduct is beyond abhorrent; he targeted *thirteen* minors to whom he had access precisely because he appeared to be a stable, responsible adult with a child of his own.  The defendant manipulated the trust we inherently bestow upon men who themselves are fathers to protect their – and other – children.  Philip Raymond acted as no father should.  He took advantage of his child's friendships

4

to satiate his own lust, and positioned himself to do so in a way that he expected would go undetected.  In his own words:

> "Between you and me and this spy cam – and I believe that means no one and this spy cam – I hope to use this pen in the next week or two, maybe even this weekend, to capture the lovely little girl [names one of the victims] smooth, tiny, firm, naked little body in the nude…I might be wrong, it might first be used on my sweet [names four of the victims].  I lust for so many of Minor B's little girlfriends…and sooner or later this spy cam may get all of them in the way I'd like to see them.  And I will enjoy this very, very much.  Thank you."

PSR ¶ 16.

In fact, the defendant used it for years.  The fact that these other children (that is, the victims who were surreptitiously recorded, as opposed to Minor A, who was sexually abused, and Minor B, who was posed for some of her imagery) did not know what was happening to them in no way renders what he did to them any less serious.  Similarly, the fact that many of the victims were "merely" caught shirtless or were otherwise serendipitously positioned such that their nude genitals or pubic areas weren't successfully captured by his spy pen undermines neither the harm to those victims nor the serious predatory nature of his actions.  As Minor D's mother observes: "What Phil Raymond did to my daughter will be a daily part of my family's life for the rest of our lives…So as the mother of an "attempted," I would like to impress on you the fact that barely a minute goes by that I do not think about this and impact it has had on my daughter's life course."  Minor D VIS.  Similarly, Minor H writes, "I feel such a strong loss of autonomy and an absolute sickness about my privacy and exposure to the world.  This crime has changed my perspective of role models, parental figures, and the way I view society as a whole."  Minor H VIS.

The defendant argues that sentencing him to a term of years that is similar to the prescribed penalty for convicted recidivists[3] would not fulfill the goals of sentencing.  Def. Memo. 14.  But he *is* a recidivist.  He raped two children, documenting his sexual abuse of them so that it would be available to him in perpetuity.  He produced and attempted to produce child pornography featuring at least 11 more.  Surely, the argument cannot be that because he was not caught offending against this diverse group of victims on separate occasions, he should not be held accountable for those crimes.  Or that he should be punished the same as someone who offended against one child, one time.  Such reasoning would lead to a result completely divorced from and incongruous with the defendant's long-term pattern of offenses.

It is worth noting that, in the realm of sex offenses, recidivism is measured in terms of arrest/conviction – not in terms or whether an offender *actually* recidivates.  Philip Raymond made it years without being arrested for his offenses.  History tells us that his future (hypothetical) arrest record is not a metric that can afford the Court any sense of security or accuracy in determining what level of risk Philip Raymond would pose if he were released before the end of his natural life.  Even assuming that Raymond will pose less risk to the community at age 80 than he does now at age 65 (having been caught with child pornography at age 62), there is literally nothing in the record that merits a variance steep enough to translate to anything less than life, given that he perpetrated his crimes as an older adult and that protection of the public is but one of the factors this Court must consider in fashioning an appropriate sentence.

---

[3]   The government notes that the enhanced penalty for an offender previously convicted of a sex offense, 25-50 years, would apply to *each* count of conviction.  That is, the mandatory minimum and statutory maximum terms of incarceration would be increased; but the defendant's GSR would remain the same – life.

What is also certain is that this is not a case that merits the imposition of the minimum possible sentence.  In other cases involving hands-on offending by defendants charged with violations of 18 U.S.C. § 2251,[4] the government has recommended – and courts have imposed – sentences more reflective of the seriousness of such offenses than what the defendant here proposes.  *See*, *e.g.*, *United States v. Derek Sheehan*, No. 18-CR-10391-RGS, (defendant who produced child pornography involving his sexual assault of three minors sentenced to 45 years[5]); *United States v. Decarolis*, 19-cr-40038-TSH (defendant who produced child pornography involving five minors sentenced to 38 years); *United States v. Lee*, 18-cr-10105-IT (defendant who used messaging application to direct New Hampshire male to produce specific child pornography depicting sexual abuse of child known to that person sentenced to 20 years; defendant who sexually abused the child in producing the material sentenced to 50 years in D.N.H. in 18-cr-00004-LM); *United States v. Anthony DeOrdio*, 18-cr-30056-MGM (defendant who created child pornography depicting sexual abuse of child known to him after having been previously convicted of a child pornography offense sentenced to 50 years); *United States v. Jonathan Monson*, 18-cr-30015-MGM (defendant who created child pornography depicting sexual abuse of child known to him sentenced to 40 years); *United States v. Toronto*, 17-cr-10307-FDS (defendant who produced child pornography depicting sexual abuse of two minor victims sentenced to 40 years); *United States v.*

---

[4]  The cases cited by the defendant in which defendants charged with § 2251 violations did not involve hands-on offending.  *See United States v. Sawyer*, 16-cr-30031-MGM, ECF 1 (defendant attempted to coerce 13-year-old boys to send nude images over the internet); *United States v. Wong*, 14-cr-30029-MGM, ECF 64 (defendant solicited child pornography from various girls over the internet over five-day period).

[5]  In that case, the government also recommended a term of 60 years' imprisonment.  Unlike Philip Raymond, who is charged with offending against 13 children (two of whom he sexually assaulted), Derek Sheehan was charged with offending against three children (all of whom he sexually assaulted).  Neither defendant is alleged to have distributed the material he produced of his victims.

*Germaine*, 17-cr-30010-ADB (defendant who created child pornography depicting sexual abuse of child known to him when he was 25 years old sentenced to 35 years pursuant to plea agreement); *United States v. Jason Gendron*, 13-cr-30036-WGY (defendant who created child pornography depicting sexual abuse of four children in his care sentenced to 50 years pursuant to plea agreement contemplating range of 40-50 years).

Furthermore, contrary to the defendant's suggestion, the government's recommendation is not guided solely by "moral outrage." Def. Memo. 14. It balances a true assessment of the defendant's calculated, willful behavior, including the scope of his predation, with the need for deterrence – specific and general – and considers parity with other similarly situated offenders. The minimum available sentence here is patently insufficient to accomplish these goals of sentencing. Some reflection on societal values is warranted and necessary to evaluate the appropriateness of the GSR and fair balancing of 3553(a) factors. The defendant himself recognized that what society thinks matters: "Although it is too early to tell how she will reconcile her memories with the societal definition of molestation, incest, and statutory rape, [Minor A] is beginning to assuage my fears that she will become accuser and begin sharing these events with anyone." PSR Exh. (p. 53).

The fact that the defendant perpetrated his crimes years ago is similarly unpersuasive as an element of mitigation in an argument in favor of the mandatory minimum. The fact that he was able to otherwise live his life without detection perhaps shows that he is more of a danger than he might be if he was unable to hide such heinous protracted behavior. Even the defendant characterized his own behavior as something inherent rather than a "mistake" or one-time misstep: "There is no escaping the fact that I am a pedophile. Although this is my first youth affair as a middle-age adult, I have lived such events in my fantasies for decades[.]" PSR Exh (p. 55). "I am

a pedophile, a child 'molester,' an incestuous [relative] and proud of all these things." *Id*. at 56. The defendant described grooming Minor A (including by exposing her to child pornography that he downloads from the internet) and his systematic sexual abuse of her until she started to push back. When she was 11, approximately two years after he began sexually abusing her, he noted: "At her tender age, she is learning to say no to manipulation and pressure." *Id*. at 59. As the facts demonstrate, the defendant went on to sexually abuse at least one other child, and continued his consumption of child pornography – arresting officers found him with his computer running a child exploitation site on the Tor browser.

This manipulation is not lost on the now-adult victims. "Although I don't want to think of myself as a victim, I was taken advantage of by an adult who abused his position of power and trust to destroy my innocence. Now, I must carry this burden throughout the rest of my life." Minor A VIS. Nor is the smug tone that defines the defendant's written and oral narrations of his crimes: "I do not feel comfortable writing in detail how his actions have impacted me. I get the impression that he might find some satisfaction in it….Mr. Raymond has put on a façade for the entire lifetime that I've known him. I cannot see how someone who lived like this, for who knows how long, could change. He proudly took advantage of children and then continued to flaunt his freedom without regret." Minor K VIS. As Minor B concurred, "Because Phil outwardly presented well, other adults in my life did not notice what was happening behind closed doors." Minor B VIS.

Here, the government's recommendation is entirely reasonable and warranted, notwithstanding the fact that it is, objectively, quite high. As outlined in the PSR and above, the defendant embarked on an abhorrent course of conduct rooted in the predation of children he knew would not tell – in some cases, because they didn't know it was happening, and in others, because

they had demonstrated to him that they would not.  As he outlined in his "diary," every time he got away with abusing Minor A, it empowered him to keep going.

The pain and devastation that Philip Raymond left in his wake will, hopefully for the families whose lives he upended, dissipate over time.  The videos he created will last forever.  The foreseeable consequences of this persistent predation include an amount of time in prison commensurate with the nature and circumstances of his offense and the need to prevent him from ever doing it again.  Here, that amount of time is decades, even if that means the rest of his life.

## V.    Conclusion

The government recognizes that it is difficult to quantify exactly how much time would satisfy the Court's obligation to impose a sentence that is just, that would adequately deter both this defendant and others who might commit the same types of opportunistic crimes against children, and that would protect the most vulnerable members of our society.  The government recognizes that the GSR, as calculated in months, is astronomical.  The government's recommended term of incarceration is not a mechanical application of the Guidelines – it takes into account and properly serves the § 3553(a) factors.  In this case, that number of years must be a term that represents the remainder of the defendant's life, not the minimum possible punishment allowable by law.

Respectfully Submitted,

RACHAEL S. ROLLINS
United States Attorney

Date: October 10, 2022          By:      /s/ Anne Paruti_____
                                         Anne Paruti
                                         Assistant United States Attorney
                                         United States Attorney's Office
                                         One Courthouse Way
                                         Boston, MA 02210
                                         617-748-3310

10

## <u>CERTIFICATE OF SERVICE</u>

I, Anne Paruti, hereby certify that the foregoing was filed through the Electronic Court filing system and will be sent electronically to the registered participant as identified on the Notice of Electronic filing:


Date: October 10, 2022                                          /s/ Anne Paruti_____
                                                               Anne Paruti
                                                               Assistant United States Attorney